IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| WAYNE THOMPSON, JR.,<br><br>Plaintiff,<br><br>vs.<br><br>SUN VALLEY RADIO, INC.,<br>dba KVFX-FM/CACHE VALLEY RADIO GROUP,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No. 1:09-cv-177 SA<br><br>Magistrate Judge Samuel Alba |

Defendant Sun Valley Radio, Inc.'s ("Sun Valley") second Motion for Summary Judgment is now before the court. (Dkt. No. 72). Plaintiff alleges he experienced racial, sexual, and religious workplace discrimination while employed by Sun Valley, and was eventually terminated from his position as a result. He has brought suit under Title VII and 42 U.S.C. § 1981 alleging negligent discrimination and subsequent retaliation. Second Amended Complaint ("Complaint"), Dkt. No. 16 (Mar. 23, 2010). Defendant asserts that summary judgment should be granted because no genuine dispute as to any material fact exists and it is entitled to judgment as a matter of law.

Having carefully reviewed the parties' pleadings and the record in this case, and having

1

heard oral arguments, the court concludes, viewing all facts in the light most favorable to the plaintiff, that the Title VII negligence and 42 U.S.C. § 1981 claims fail as a matter of law. The court also concludes, however, that a genuine dispute as to material facts precludes summary judgment as to Plaintiff's Title VII retaliation claim. Therefore, the court GRANTS IN PART and DENIES IN PART Defendant's motion.

## LEGAL STANDARD OF REVIEW

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view all evidence and draw all reasonable inferences therefrom in the light most favorable to Plaintiff Wayne Thompson, Jr. ("Thompson"), the nonmoving party. *See Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006).

## FACTS

Thompson was employed by Sun Valley as a radio disc jockey. Thompson's immediate supervisor was Nick Thomas ("Thomas"), who was in turn supervised by Lynn Simmons ("Simmons"). Simmons reported to the owner of the radio station, Kent Frandsen ("Frandsen").

It is undisputed that Thomas regularly called Thompson by potentially offensive names. Thompson alleges that several of these nicknames, including "numb nuts," "dick suck," and "douche bag," are particularly offensive to men and constituted sexual discrimination. Defendants argue such language was used by all employees, including Thompson, and that Thomas called Thompson's coworkers, both male and female, by the same terms. Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment ("Memo. Opp."), Dkt. No. 74, Ex. 1 at 146–47. Thompson disputes ever having used such language or having heard it

directed at anyone else. *Id.* Ex. 2 at 29.

Another of the nicknames commonly used by Thomas was "monkey." Thompson, who alleges he was the only African-American employed by Sun Valley, states the term is racially offensive and alleges Thomas used the term to make Thompson feel uncomfortable.

Thompson also alleges religious discrimination. Thomas was a member of the Church of Jesus Christ of Latter Day Saints ("the LDS Church"). He learned that Thompson was also affiliated with the church when Thompson told Thomas that Thomas' grandfather was one of Thompson's ecclesiastical leaders. *Id.* Ex. 3 at 40. Devout male members of the LDS Church typically serve missions upon turning nineteen years old. After Thompson's nineteenth birthday, he alleges Thomas pressured him to go on a church mission, eventually telling him that he would be fired if he did not. *Id.* Ex. 2 at 34–35.

On October 10, 2006, Thompson called Simmons, Thomas' supervisor, reporting the perceived discrimination. Simmons instructed Thompson to prepare a written letter detailing his complaints, which was completed that same night. The next day, October 11, 2006, Simmons met with Thomas and Thompson to address the problem. Thompson reports that throughout the meeting, Simmons sided with Thomas in characterizing the insults as jokes. *Id.* at 44, 65–68. Furthermore, other than the meeting with Thompson and Simmons, and a second meeting with Simmons alone, Thomas was not reprimanded for his behavior. *Id.* Ex. 1 at 148–49. Simmons did, however, tell Thomas to "be civil" and "treat [Thompson] with respect." *Id.* Ex. 2 at 44–45. Following the meeting Thomas began communicating with Thompson primarily in writing, and no longer called him potentially offensive names. *Id.* at 45. Thomas reports Simmons followed up with him to ensure the behavior had stopped. *Id.* Ex. 3 at 51.

Thompson alleges that discrimination against him continued, however. At or shortly after the meeting, he was changed from a salaried employee to an hourly one. *Id.* Ex. 2 at 105. Although the hourly wage at forty hours a week would have roughly equaled his previous salary, Thompson alleges his hours were also curtailed so that Sun Valley began paying him significantly less. *Id.* at 108. Sun Valley alleges the change was necessary for productivity, as Thompson had been taking advantage of his salaried status by working few hours, but that he had previously abused an hourly wage by accumulating unnecessary overtime. *Id.* Ex 1 at 89, 178–79.

Following Thompson's transition from salary to an hourly wage, a sign appeared near the time cards reminding Thompson and the three other hourly employees, by name, to fill them out. *Id.* Ex. 2 at 54–55. Thompson believes this note was meant to alert Thompson's coworkers that he had been taken off salary and that it constituted continuing harassment.

Other signs also appeared, one instituting a new late policy the day after Thompson was tardy, and one stressing only recyclables could be thrown in the recycling can, which appeared the day after Thompson put non-recyclable trash in the receptacle. Both parties agree that other employees were sometimes tardy, or threw garbage into the recycling bin. Sun Valley argues this shows the signs were not meant to harass Thompson, while Thompson contends that the fact signs were put up only after he, and not his coworkers, engaged in the unwanted behavior shows he was being directly targeted.[1]

---

[1] Thompson also describes a conversation he had with another employee, Kyle Jorgensen ("Jorgensen"). Thompson alleges Jorgensen told him that, even after the meeting, Thomas expressed anger that Thompson was not planning on going on a church mission. Memo. Opp. Ex. 2 at 45–46. Based on the record before the court, this statement is inadmissible hearsay and cannot be considered in reviewing the motion for summary judgment. *See Adams v. Am. Guar.*

4

Eventually, in early February of 2007, Thompson left Sun Valley. The parties dispute whether he voluntarily quit or was fired. Frandsen, the station owner, told Thompson his job was being replaced by an automated voice-tracking system to save costs. *Id.* Ex. 2 at 10; Ex. 6. Frandsen also told Thompson he was an at-will employee and Sun Valley was free to terminate him for no reason. *Id.* Ex. 1 at 60; Ex. 6. In a letter to the Equal Employment Opportunity Commission ("EEOC"), Thomas claimed Thompson was fired for tardiness, unexcused failure to attend a staff meeting, using an on-the-clock intern to give him a ride to work, playing inappropriate phone calls on the air, and calling in sick. *Id.* Ex. 4. All of these events allegedly occurred within the three weeks preceding Thompson's alleged termination. *Id.* Despite all these proffered reasons on the record and the fact that Thompson collected unemployment after leaving the station, Sun Valley maintains that Thompson voluntarily quit his position. *Id.* Ex. 1 at 43–44. Sun Valley has said it began negotiations with other radio talent to replace Thompson before Thompson left the company. *Id.* Ex. 3 at 107.

After his employment at Sun Valley ended, Thompson brought his complaints before the

---

*& Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) ("Hearsay testimony that would be inadmissable at trial cannot be used to defeat a motion for summary judgment because a third party's description of a witness' supposed testimony is not suitable grist for the summary judgment mill.") (internal quotation marks omitted).

Additionally, Thompson alleges that after the October 2006 meeting, Thomas told him that Sun Valley's management felt Thompson "was sounding too black on the station" and that Thompson "may need [to] make it so [he] sounded more white." Memo. Opp. Ex. 2 at 48, 51. Thompson does not allege that this showed racial bias on Thomas' part, however. *Id.* at 43 (noting Thomas "was appalled" that the station told Thompson to sound less black). Rather, he stated the comment showed racial bias on the part of management. *Id.* at 50. In this context, the statement is inadmissible hearsay. *See Powell v. Laborers Union No. 1271*, 426 Fed. App'x 615, 621 (10th Cir. 2011) (noting that although testimony by an employee of racially biased statements of another employee is admissible, testimony by an employee [Thompson] of another employee's [Thomas'] statements recounting a third party's [management's] racial bias are inadmissible hearsay).

5

EEOC. The EEOC was unable to settle the matter, and sent Thompson Notice of Right to Sue. Following receipt of this letter, Thompson filed suit before this court seeking damages, restoration of his employment, and injunctive relief. Parties have consented to jurisdiction by the undersigned magistrate judge. (Dkt. No. 25).

## ANALYSIS

In its motion for summary judgment, Sun Valley contends that Thompson's Title VII Negligence and Hostile Work Environment claims[2] are barred because Sun Valley did not know of the harassment and, alternatively, because the station took prompt and effective measures to stop the allegedly discriminatory behavior after it came to light. Sun Valley also argues that Thompson's Title VII Negligence and Hostile Work Environment claims must fail because the complained-of behavior was not unwelcome, it was not motivated by an unlawful animus, the station did not have knowledge of the situation, and the alleged discrimination was not severe or pervasive. Finally, with regards to Thompson's Title VII Retaliation claim, Sun Valley maintains no adverse action was taken by the company against Thompson and there was no causal connection between any employment actions and Thompson's complaints about discrimination. The court will consider each of these arguments in turn and, for the reasons explained below, hold that these arguments do not eliminate the issues of disputed fact which bar summary judgment.

### I. NEGLIGENCE

In order to successfully bring a Title VII negligence claim, a plaintiff must show his

---

[2] "[T]he elements of a hostile work environment claim under § 1981 are the same as those under Title VII." *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1152 (10th Cir. 2008).

6

"employer fail[ed] to remedy a hostile work environment it knew or should have known about." *Hollins v. Delta Airlines*, 238 F.3d 1255, 1258 (10th Cir. 2001). "Because an employer is only potentially liable for negligence in remedying and preventing harassment of which it negligently failed to discover, courts must make two inquiries: first into the employer's actual or constructive knowledge of harassment, and second, into the adequacy of the employer's remedial and preventative responses to any actually or constructively known harassment." *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1147 (10th Cir. 2008) (quoting *Alder v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir. 1998)). Sun Valley has argued that neither knowledge nor inadequate response can be shown here.

## A.     Knowledge

Taking the facts in the light most favorable to Thompson, it is clear that Sun Valley knew or should have known of the alleged harassment. Simmons, the station manager, stated that he was aware of the name calling that led to Thompson's complaint. Memo Opp. Ex. 1 at 146–47 ("I had heard a little bit [of this type of language] in the hall and I . . . just thought it was camaraderie between the staff the way they spoke."). Thompson has not alleged, however, that Simmons knew the language in question was offensive or unwelcome, or that Simmons knew Thomas was directing this language towards Thompson. Furthermore, Thompson does not allege that Simmons knew of Thomas' threats that Thompson would be fired if he did not go on a church mission. Therefore, based upon the evidence in the record, a jury could not reasonably find that Sun Valley knew of the harassment before Thompson brought it to Simmon's attention through his formal complaint.

However, Simmons clearly knew of the harassment on October 10, 2006, because

7

Thompson reported that conduct to him, both in conversation and in writing. "Actual knowledge [of harassment] will be demonstrable in most cases where the plaintiff has reported harassment to management-level employees."[3] *Alder*, 144 F.3d at 673. Taking all facts in the light most favorable to Thompson, Sun Valley knew of the purported harassment beginning on October 10, 2006.

### B.  Prompt and Effective Response

Sun Valley's response was prompt. After being informed by Thompson that he felt harassed at the work place, Simmons almost immediately arranged a meeting between himself, Thomas, and Thompson. That meeting was held the day after Thompson first complained to Simmons. Therefore, this response was prompt. *Cf. Scarberry v. Exxonmobil Oil Corp.*, 328 F.3d 1255, 1258 (10th Cir. 2003) (holding even though a supervisor did not come in on his day off to address alleged harassment, an investigation into the problem the following day constituted a prompt response).

The more difficult question is whether Sun Valley's response was effective. Only a single meeting was held between Simmons, Thomas, and Thompson to resolve the problem. While Simmons may have followed up with Thomas to ensure the harassment had stopped, no one has testified management followed up with Thompson. Thompson emphasizes that Simmons sometimes defended Thomas at the meeting, and outside private meetings Thomas was never reprimanded or punished for his allegedly offensive behavior.

Defendant asserts that the response was effective because it stopped the harassment. *See*

---

[3] Although exceptions exist, such as when the employee makes their complaints to a manager who is the alleged source of the harassment, this is not the situation currently before the court. *See Chapman v. Carmike Cinemas*, 307 Fed. App'x 164, 174 (10th Cir. 2009).

*Alder*, 144 F.3d at 676 (noting "a stoppage of harassment shows effectiveness"). The parties do not dispute that after the meeting, Thomas ceased calling Thompson by potentially offensive nicknames. Thompson contends, however, that he continued to be harassed by the notes left in workplace common areas.

Therefore, the issue before the court is whether the alleged harassment following the meeting was sufficient to constitute a hostile work environment. If not, then given the promptness of Sun Valley's response, no reasonable jury could find that the defendant was responsible for failure to remedy a hostile work environment, even if such a hostile work environment had initially existed.

## II.   HOSTILE WORK ENVIRONMENT

Title VII negligence claims arise when an employer allegedly "fails to remedy a hostile work environment." *Hollins*, 238 F.3d at 1258. To establish a hostile work environment existed in violation of law, Thompson must show that he was subjected to unwelcome harassment, based upon sex, race, or religion, and "due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment." *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007) (sexually hostile work environment); *see also Chavez v. New Mexico*, 397 F.3d 825, 832 (10th Cir. 2005) (racially hostile work environment); *Belgasem v. Water Pik Techs., Inc.*, 475 F. Supp. 2d 1205, 1219–20 (D. Colo. 2006) (religiously hostile work environment). Sun Valley argues Thompson has not adequately made this showing because the alleged harassment was not unwelcome, it did not stem from an unlawful animus, and it was not severe or pervasive.

### A. Unwelcomeness

In order to constitute harassment, conduct "must be unwelcome in the sense that the employee did not solicit or incite it," and the employee indicated by his own conduct that the alleged harassment was undesirable or offensive. *Morton v. Steven Ford-Mercury of Augusta, Inc.*, 162 F. Supp. 2d 1228, 1238 (D. Kan. 2001) (quoting *Bales v. Wal-Mart Stores, Inc.*, 143 F.3d 1103, 1108 (8th Cir. 1998)); *see also Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 69 (1986). Sun Valley argues that Thompson participated in sexually joking about other employees and used offensive pet names himself. This is, however, a disputed issue of fact, and Thompson maintains he did not participate in the allegedly offensive banter.

Sun Valley also argues that Thompson cannot say the alleged religious pressure was unwelcome because Thompson instigated a religious conversation when he told Thomas that Thomas' grandfather was the bishop of Thompson's congregation. The court agrees with Thompson that this conversation between Thomas and Thompson was a discussion about family and community ties, not an invitation by Thompson for Thomas to take an active role in his spiritual life. *Cf. Morton*, 162 F. Supp. 2d at 1239 (noting a plaintiff's initiation of a workplace conversation about nude sunbathing does not establish plaintiff welcomed subsequent sexual harassment). Therefore, the court finds that, taking the facts in the light most favorable to Thompson, the alleged harassment before the meeting was unwelcome.

The court will similarly assume that the notes posted after the meeting were also unwelcome. Thompson has stated that at least one of the notes offended him. Memo Opp. Ex. 2 at 47. Sun Valley does not dispute this. Memorandum in Support of Defendant's Motion for Summary Judgment at 8, Dkt. No. 72 (from Defendant's proposed "Undisputed Material Facts").

**B.     Animus**

Sun Valley also argues that the alleged harassment, particularly the nick names such as "douche bag" and "monkey," were meant to be harmless and did not arise from any racial, sexual, or religious animus. It is true that if Thomas did not mean for any of the utterances to be offensive, they could not constitute a hostile work environment even if Thompson was offended by them. *See Gross v. Burggraf Const. Co*, 53 F.3d 1531, 1537 (10th Cir. 1995); *see also Meritor*, 477 U.S. at 67. The court also notes that issues of intent, when plaintiff raises plausible arguments from "which a jury could infer a discriminatory motive," are generally better addressed at trial than through summary judgment. *Randle v. City of Aurora*, 69 F.3d 441, 453 (10th Cir. 1995) (citing *Romero v. Union Pac. R.R.*, 615 F.3d 1303, 1309 (10th Cir. 1980) (stating in the employment context, issues of motive and intent are "particularly inappropriate for summary judgment") and *Washington v. Garrett*, 10 F.3d 1421, 1433 (9th Cir. 1993) ("If the plaintiff succeeds in raising a genuine factual issue regarding the authenticity of the employer's stated motive, summary judgment is inappropriate, because it is for the trier of fact to decide which story is to be believed.")).

The court concludes that, taking all facts in the light most favorable to Thompson, the issue of animus cannot be decided at the summary judgment stage. The terms which Thomas used, including "numb nuts," "dick suck," and "monkey" are phrases which can be sexually or racially offensive. Thompson maintains that other employees were not subjected to this same type of harassment, a fact which, if believed by the jury, could support a reasonable finding that Thomas used the terms with the intent to demean Thompson. Furthermore, it is not unreasonable to believe that when Thomas told Thompson he would be fired if he did not go on an LDS

church mission, Thomas was intending to harass Thompson on the basis of religion.

Following the meeting, the only admissible evidence of harassment are the three posted notes. None of these notes contained any racial, sexual, or religious references. Taking the facts in the light most favorable to Thompson, however, the notes arose in the context of ongoing discrimination and were targeted directly towards him, the only African-American employee at the station. Assuming without deciding that a jury could reasonably find that the notes arose from racial, sexual, and/or religious animus, the court proceeds to the third step of the analysis: whether the alleged harassment was sufficiently severe and pervasive to support a finding of a hostile work environment.

### C.  Severe or Pervasive

Even when harassment is unwelcome and motivated by discriminatory intent, it only creates a hostile work environment when it is so severe or pervasive as to "alter[] a term, condition, or privilege of the plaintiff's employment and create[] an abusive working environment." *Harsco Corp.*, 475 F.3d at 1186 (10th Cir. 2007). "Title VII does not establish a general civility code for the workplace. Accordingly, . . . run-of-the mill boorish, juvenile, or annoying behavior . . . is not the stuff of a Title VII hostile work environment claim." *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012) (internal quotation and citations omitted).

Prior to the October 2006 meeting, the sexual and racial language at Sun Valley may have been pervasive. Memo. Opp. Ex. 1 at 146 (Simmons testifying he "heard everyone" using language such as "monkey"); *Id.* at 154 (Simmons testifying Thomas "regularly" used the term "douche bag"). It is also undisputed that Thomas told Thompson he would be terminated if he

12

did not participate in an LDS church mission, which could be considered severe.

Following the meeting between Thompson, Thomas, and Simmons on October 11, 2006, however, any remaining harassment was not severe or pervasive. Thompson complains of only three notes, over a period of several months. None of these notes contain discriminatory language, and instead emphasize that employees were to be on time, record their hours, and refrain from throwing nonrecyclables in the receptacle designated for recyclable waste. Even if these notes offended Thompson, and even if they were written by Thomas with the intention of harassing Thompson on account of his sex, race, or religious beliefs, they were not sufficiently severe or pervasive to constitute a hostile work environment.

Taking the facts in the light most favorable to Thompson, a hostile work environment may have existed at Sun Valley prior to October 2006. However, the facts do not support a reasonable finding that a hostile work environment persisted following the October 2006 meeting. Therefore, Sun Valley's response to its knowledge of the alleged harassment was both prompt and effective, and the court grants summary judgment in favor of the defendant on Thompson's claims of Title VII negligence and 42 U.S.C. § 1981.

## III.   RETALIATION

Title VII prohibits an employer from retaliating against an employee because the employee has opposed discriminatory employment practices. *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1064 (10th Cir. 2009). "To establish a prima facie case of retaliation, a plaintiff must demonstrate (1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Id.*

13

Defendant argues that Thompson has not reasonably shown the existence of the last two elements of a retaliation claim.

Once the plaintiff makes a prima facie showing of retaliation, "the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* (internal quotation marks omitted). "If the employer articulates a legitimate reason for the action, then the plaintiff must demonstrate that the employer's asserted reasons are pretextual." *Id.* In addition to arguing that Thompson cannot make a prima facie showing of retaliation, Sun Valley also contends that any actions it did take were for legitimate reasons and Thompson cannot show pretext. The court will consider each of these arguments in turn.

### A. Adverse Action

An adverse employment action is one which "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 54 (2006). "[W]hile the standard is sensitive to the particular circumstances of each case, it prescribes an objective inquiry that does not turn on a plaintiff's personal feelings about those circumstances." *Semsroth v. City of Witchita*, 555 F.3d 1182, 1184 (10th Cir. 2009).

Taking the facts in the light most favorable to Thompson, Sun Valley simultaneously changed him from a salaried employee to an hourly one and curtailed his hours to part-time, thus significantly reducing his pay. The Tenth Circuit has found "that the prospect of losing wages" would deter a reasonable worker from supporting a charge of discrimination. *McGowan v. City of Eufala*, 472 F.3d 736, 742 (10th Cir. 2006). Therefore, such a change in pay could constitute an adverse action.

14

Furthermore, Thompson contends he was terminated from Sun Valley. "It hardly requires stating that when an employer tells an employee that []he no longer has a job, that employee's job status has been significantly and materially altered" in a way that constitutes an adverse employment action. *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1216 (10th Cir. 2003).

**B.     Causally Related**

Thompson must also show that there could be a causal relationship between his protected activity of complaining of discrimination and the adverse employment actions of being fired and terminated. "A causal connection is established where the plaintiff presents evidence of circumstances that justify an inference of retaliatory motive." *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1279 (10th Cir. 2005). In the Tenth Circuit, "protected conduct followed closely by adverse action may justify an inference of retaliatory motive." *Marx v. Schnuck Mkts., Inc.*, 76 F.3d 324, 329 (10th Cir. 1996).

Taking the facts in the light most favorable to Thompson, his pay was changed and his hours were dramatically curtailed at or shortly after the meeting with Thomas and Simmons. Memo. Opp. Ex. 2 at 105 ("I was on salary until my meeting with Nick [Thomas] and Lynn Simmons, where my salary was reduced and taken back down to hourly again."). This close temporal proximity is sufficient to support an inference of a causal connection between Thompson's complaints and his change from a full-time salaried employee to part-time hourly compensation.

In contrast, approximately four months passed between the October 2006 meeting and Thompson's alleged termination. This amount of time, in itself, may not be sufficient to support an inference of retaliatory motive. When considered in the context of the earlier hour reduction

15

and the workplace notes, however, a reasonable jury could infer that the termination was motivated by a retaliatory motive and find a causal connection between Thompson's grievances and termination. Therefore, the court finds that, taking all facts in the light most favorable to Thompson, the record supports a prima facie case of retaliation.

## C.    Pretext

Under the *Mcdonnell Douglas* burden-shifting framework, however, once a plaintiff establishes a prima facie case the employer has the opportunity to show legitimate reasons existed for the adverse employment actions. In this case, Sun Valley has advanced many such reasons. It has alleged the salary change and termination were made for budget reasons, that no justification was needed to terminate Thompson, and that Thompson was fired for misconduct.

After an employer advances legitimate reasons for an adverse employment decision, if a plaintiff "presents evidence that the defendant's proffered reason for the employment determination was pretextual, i.e. unworthy of belief, the plaintiff can withstand a summary judgment motion and is entitled to go to trial." *Randle*, 69 F.3d at 451. Thompson has made several arguments to establish Sun Valley's proffered reasons were pretextual.

First, "close temporal proximity is a factor in showing pretext, [although it] is not alone sufficient to defeat summary judgment." *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1240 (10th Cir. 2004). As discussed above, Thompson alleges there was very close temporal proximity between the October 2006 meeting and Thompson's reduction in hours and pay.

Second, when there is no documentation for the articulated reasons for an employment action, this can serve as evidence of pretext. *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) (cited in *Paup v. Gear Products, Inc.*, 327 Fed. App'x 100,

16

112 (10th Cir. 2009)). In the letter to the EEOC, Sun Valley has suggested that Thompson was fired largely for being tardy and airing inappropriate telephone calls on the air. As Plaintiff has pointed out, however, "Defendant has failed to produce any time cards evidencing tardiness . . . or any recorded copies of the alleged improper on air phone calls." Memo. Opp. at 41.

Third, when an "employer offers a plethora of reasons, and the plaintiff raises substantial doubt about a number of them," this "is sufficient to create a genuine issue of fact as to pretext." *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1310 (10th Cir. 2005). "An employer who pursues a shotgun approach . . . runs a risk of destroying its own credibility because the factfinder's rejection of some of the defendant's proffered reasons may impede the employer's credibility seriously enough so that a factfinder may rationally disbelieve the remaining proffered reasons." *Id.* at 1310–11 (internal quotation marks omitted).

In this case, Sun Valley has offered "a bagful of legitimate reasons." *Id.* at 1311. Defendant's testimony concerning Thompson's termination has changed over time and is at times self-contradictory; management cannot even agree whether Thompson was fired or quit. Thomas alleged Thompson was terminated for acts of misconduct, yet other evidence suggests Thompson's replacement had already been hired before many of those alleged acts occurred.

Given these circumstances, Thompson has advanced sufficient evidence of pretext to survive summary judgment. Because the facts, taken in the light most favorable to the plaintiff, support a prima facie case of retaliation and an inference that Sun Valley's articulated reasons for its decisions were pretextual, the court denies summary judgment on the Title VII retaliation claim.

## CONCLUSION

Plaintiff's claims of negligence under Title VII and violation of 42 U.S.C. § 1981 are not supported by the record. Taking all facts in the light most favorable to the Plaintiff, however, he has raised a claim of retaliation under Title VII. Therefore, for the reasons stated above, Defendant's Second Motion for Summary Judgment[4] is GRANTED IN PART and DENIED IN PART.

DATED this 30 day of April, 2012.

BY THE COURT:

Samuel Alba
United States Magistrate Judge

---

[4] Dkt. No. 72 (Sept. 1, 2011).